*115]                SMITH v. BRODHEAD'S Executors.

*Feme covert.*

A *feme covert* ga*r*e bond to pay a debt of her husband; she was seised of a separate estate under a deed of settlement, with power to make a will; she did make a will, and in it directed the payment of her debts: *Quære.* Whether her estate, in the hands of her executors, was liable to pay the amount of the bond?

THIS cause was tried at Berks *nisi prius*, in October 1791, when the jury found the following special verdict:

"The jury find, that in the year 1785, the plaintiff sold a tract of land to Daniel Brodhead, Esq. (the husband of Rebecca Brodhead, the defendant's testatrix), for the sum of 500*l.*; that the land has since been sold, by execution, after the death of Rebecca Brodhead, the testatrix, for the proper debt of the said Daniel; that 150*l.* of the purchase-money was paid in hand, and the said Rebecca gave six bonds for the payment of the residue, in annual instalments; that the said Rebecca, at the time of executing the bonds, was a *feme covert*, living with her husband, and continued so to do, until her death; that she was seised of a separate estate, under a deed of settlement, with power, *inter alia*, to make a will; that by her last will, duly proved, she appointed the defendant her executor, and *inter alia*, directed the payment of her debts; that two of the bonds were duly paid in the lifetime of the said Rebecca; and the present action is brought upon another of the bonds.

"If upon the above case, the court should be of opinion, that the plaintiff is entitled to recover, the jury find for the plaintiff in this cause 60*l.* debt, 12*l.* 12*s.* damages, and six pence costs: otherwise, they find for the defendant."

The general question was, whether the bond of a *feme covert* bound her estate, in the hands of her executors, under the circumstances stated in the special verdict?

For the *plaintiff*, the case was discussed on several grounds: 1st. That a court of chancery would give relief upon the bond.   2d. That to prevent a failure of justice, the courts of Pennsylvania will amplify their jurisdiction, upon principles of equity.   3d. That the will of the testatrix, directing the

---

payment of debts, would make the bond a charge **on the executors** as a debt in equity. And the following authorities were cited to show the principle, on which a court of equity would interpose; and the extent to which the courts of Pennsylvania had exercised an equitable jurisdiction. (1 Ves. 517, 163 : Prec. Ch. 328; Gilb. Eq. 83 ; 2 Ves. 193 ; Bro. Ch. 20 ; 2 Atk. 68 ; 1 T. R. 5 ; Pow. on Cont. 89 ; 1 Dall. 213–4, 339–40 ; Eq. Rep. Gilb. 94 ; 1 Dall. 17, 72, 428 ; 2 Vern. 225 ; Doug. 53 ; Cowp. 201–4.) The executors being bound to pursue the directions of the will, the devisee ought not to be permitted to resist it.

For the *defendant.*—A court of chancery would not do that for the plaintiff, which would be the consequence of a general judgment in his favor. *116] The wife's engagements have never *been satisfied in equity, beyond her personal estate, and the rents and issues of her real estate ; but a general judgment, in Pennsylvania, would bind the real estate absolutely ; so that it might be taken in execution and sold. If, indeed, this were a court of equity, the defendant might make many matters appear to rebut the plaintiff's equity, which it is too late to urge on a special verdict. And this court, as a court of common law, will never consider bonds as appointments, when the party could not legally enter into a bond. (*Norton* v. *Turville,* 2 P. Wms. 145 ; 1 Bro. Ch. 16.)

*Cur adv. vult.*(a)

---

(a) The reporter has not been able to trace the decision of this cause.

